Filed 12/11/14  In re S.G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. C.J., Defendant and Appellant. | G050454 (Super. Ct. No. DP024768-001) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

The juvenile court found it had dependency jurisdiction over now nine-year-old S.G. (child) under Welfare and Institutions Code section 300, subdivision (b)(1) (failure to protect). (All further statutory references are to this code.) In the disposition, the court ruled child was a dependent child and removed her from the custody of defendant, C.J. (mother).

Mother maintains the finding she "may have an alcohol abuse problem" is insufficient evidence justifying the court assuming jurisdiction over child. We conclude sufficient evidence supports the judgment and affirm.

## FACTS AND PROCEDURAL HISTORY

In March 2014 plaintiff Orange County Social Services Agency (SSA) filed a dependency petition on behalf of child, alleging child suffered or was at substantial risk of suffering serious physical harm due to mother's failure to adequately protect her or mother's inability to properly care for child due to substance abuse, or both.

The petition was based on five factual allegations. First, mother did not timely pick up child from school and when she arrived it appeared she was intoxicated. After failing to pass a field sobriety test, mother was arrested for driving under the influence and for driving with a blood-alcohol level of .08 percent or higher. Second, mother and child had been homeless, living in the car, for the past month.

Third, mother "may have a substance abuse problem." Child explained "mother drinks 'bad stuff' and gives herself shots to 'take out her blood.'" Fourth, mother had hit child with a belt. Finally, the alleged father's whereabouts were not known and he had not provided proper support or care of the child.

At the jurisdiction and disposition hearing, the court admitted the jurisdiction dispositional report and three addenda and mother's guilty plea (*Tahl* form; *In re Tahl* (1969) 1 Cal.3d 122, 132) to driving under the influence. In addition, the social worker and mother testified. The evidence showed the following:

2

In March 2014 child was taken into custody after mother arrived to pick her up at school 90 minutes late and under the influence of alcohol. After waiting 45 minutes, when it was unable to contact mother and learned her emergency contact lived out of state, the school had called the sheriff's department. When mother arrived, the deputy noticed alcohol on mother's breath, and asked her if she had been drinking. She said she had consumed two drinks earlier but was not drunk and could drive child home. Mother was arrested after she failed a field sobriety test; her blood-alcohol level was found to be .134 percent. Mother told the sheriff she and child had been living in motels until 5 days before when her money had run out, at which time they began living in her car. She was trying to get into a shelter. The whereabouts of child's father were unknown and mother had no one to care for child.

Mother pleaded guilty to driving under the influence. When she later discussed this with the social worker from SSA, she denied being intoxicated, stating she had only had two glasses of wine. Mother said she had no problems walking or with her speech when she arrived at the school. She was a social drinker and drank only when she could afford it, two to three times every couple of months. Mother was late picking up child because of car problems. And she could not call the school until her car was started because she needed to charge her cell phone.

After her arrest mother remained in jail for three days because, in addition to the driving under the influence charge, she had two warrants from homeless court she had to clear up. The social worker recommended mother begin counseling, a parenting program, a drug treatment program, and drug and alcohol testing. Mother advised she would attend the criminal court sponsored alcohol treatment programs.

Child was placed with a family friend, M.B. M.B.'s daughter and child are best friends. Mother and child had stayed with M.B. for three months in late 2013. Mother and M.B. "'went [their] separate ways'" after mother did not comply with M.B.'s house rules.

3

Child stayed with M.B. for about six weeks. Mother did not call or visit child during about half of this period. On occasion when she did visit she discussed the case with child, disparaging M.B., and telling child her placement would change; this distressed child. As a result, visitation began to be monitored. During this time M.B. told the social worker that child had begun to tell her mother would sometimes "'act dizzy'" or "'make me take a [nap] when she was driving.'"

Child's placement was changed to Orangewood on M.B.'s request due to reports of child's inappropriate sexual touching.

Mother missed intake appointments for her individual counseling program and those services were suspended. She participated in several random drug and alcohol tests, the results of which were all negative.

At the jurisdiction and disposition hearing the social worker testified the child would be at substantial risk if returned to mother's custody because mother was not visiting the child and had neither stayed in contact with SSA nor kept it informed as to her residence or programs. The social worker had unsuccessfully tried to call mother several times and mother had missed two appointments with her. The social worker noted mother had been referred to counseling and had advised she would participate in substance abuse programs in connection with her driving under the influence conviction. The social worker also knew of mother's negative drug test results.

The social worker also testified it was her opinion mother had a substance abuse problem because she went to pick up child from school while intoxicated. She conceded one conviction for driving under the influence did not necessarily equate to a substance abuse problem. But that allegation was properly included in the petition because she did not "know enough about the situation to make that determination."

Mother testified she had pleaded guilty to driving under the influence, but had not read the plea agreement and intended to have the plea set aside. She had not yet enrolled in an alcohol treatment program, resulting in a probation violation. She had not

4

had time because she had started a new job. She was trying to obtain services through the Veterans Administration.

Mother admitted she had not kept in contact with the social worker because she "ha[d] issues" with her. Mother found it difficult to communicate with her because the social worker was intimidating her and "mak[ing me] out to be like this bad person, which I'm not."

In sustaining the petition, the court deleted the allegations mother had hit child with a belt or had a drug problem. It also amended the allegation from mother "may have a substance abuse problem" to read that mother "may have an alcohol abuse problem." Although the court complimented mother because her drug tests had all been negative, it also found mother had not cooperated and had in fact been "hostile" and "obstructionist in the process."

## DISCUSSION

### 1. Standard of Review and Applicable Law

We review appeal of a jurisdictional order under the substantial evidence standard. (*In re James R.* (2009) 176 Cal.App.4th 129, 134-135.) Mother has the burden to show the insufficiency of the evidence. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 251.)

In determining whether there is substantial evidence, we draw all reasonable inferences in favor of the judgment. We do not reweigh the evidence or redetermine credibility. Nor do we consider contrary evidence even if it might support the opposite result. (*In re James R.*, *supra*, 176 Cal.App.4th at p. 135.)

"[S]ubstantial evidence is not synonymous with any evidence" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393, italics omitted) but must be "reasonable, credible, and of solid value" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401). "A decision supported by a mere scintilla of evidence need not be affirmed on appeal." (*In re Savannah M.*, *supra*, 131 Cal.App.4th at p. 1393.) "'The ultimate test is

5

whether it is reasonable for the trier of fact to make the ruling in question in light of the whole record.'" (*Id.* at pp. 1393-1394.)

Under section 300, subdivision (b)(1), a court may take dependency jurisdiction over a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." "'Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a substantial risk of serious physical harm or illness.'" (*In re Janet T.* (2001) 93 Cal.App.4th 377, 391, italics and fn. omitted.) The legislative intent underlying this statute "'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773, italics omitted.)

*2. Sufficient Evidence to Support Finding of Jurisdiction*

Mother's primary argument is that her one conviction for driving under the influence is insufficient to show child was at risk of future harm. She argues there is no evidence she has any problem with alcohol abuse.

Mother points to the fact she never missed a drug test and the results of all were negative, she had no prior arrests or convictions, and the court found child's statements about mother's drinking too vague.[1] Further, she claims, the finding she "'may' have an alcohol problem" is insufficient.

In support of her argument mother relies heavily on *In re J.N.* (2010) 181 Cal.App.4th 1010. In *J.N.*, the father, under the influence of alcohol, was in an automobile accident. The mother was also under the influence, and the three children

[1] The court specifically did not disbelieve child.

6

were in the car as well.  The court found that this accident alone was not sufficient to sustain an allegation under section 300, subdivision (b)(1) that the parents "'appear[ed] to have a substance abuse problem'" without additional evidence.  (*In re J.N.*, at p. 1023.)

While there is an obvious similarity to the present case, i.e., a single drunk driving incident conviction, a further reading of *J.N.* shows it actually supports the court's jurisdictional finding.  *J.N.* held that when there has been but one incident of conduct endangering a child, the court should look at both the type of problematic conduct and "all the surrounding circumstances" in determining whether jurisdiction is proper.  (*In re J.N.*, *supra*, 181 Cal.App.4th at pp. 1025-1026.)  It should also consider current circumstances, including the parent's present "understanding of and attitude toward the past conduct that endangered a child." (*Ibid*.)  In addition the court should look at whether the parent is participating in programs, provided by the social service agency or the criminal courts, or otherwise addressing the dangerous conduct to prevent its recurrence.  (*Ibid*.)

While the *J.N.* court found no evidence to support a finding there was a substantial risk the parents would repeat the dangerous conduct, such is not the case here.

At the time of her arrest, mother denied being intoxicated.  More importantly, even after pleading guilty to driving under the influence, when discussing the incident with the social worker mother continued to dispute her intoxication.  She insisted she had been able to walk and talk and explained she was only driving a short distance.  Mother also proclaimed she was attempting to have the conviction overturned.  At trial, she at first denied she had signed the *Tahl* form.  When shown the document containing her signature admitting the underlying facts of the charge, she conceded she had signed it but maintained she had not read it.

Additionally, mother had failed to register for the alcohol treatment program required as part of her probation for three months after her conviction, pointing out, "I got delayed."  This resulted in a probation violation, although she later obtained an

7

extension from the criminal court, explaining she had not had the money to enroll in the class.

Mother also did not keep in contact with her social worker, failing to return calls, and missing two appointments, because she "ha[d] issues" with the social worker. Further, mother missed individual counseling appointments, resulting in a suspension from the program.

These facts taken together support a finding mother was neither acknowledging nor addressing the drunk driving incident that caused the initial detention. While we applaud mother's negative drug tests, her hostile and "obstructionist" behavior vis-à-vis SSA and failure to participate in other programs demonstrate a lack of commitment to resolving the problem that initiated the SSA process. This certainly supports an inference there is a substantial risk the conduct would occur again, placing child in serious danger of harm.

Mother argues the court could not base a finding of jurisdiction based on her failure to participate in programs prior to the date a formal service plan was adopted after the jurisdiction hearing. But there is no evidence the court did so. Moreover, *J.N.* specifically stated that in determining whether the court could properly assume jurisdiction, it could consider whether a parent was availing herself of programs.

Contrast mother's behavior here with the parents' attitude and behavior in *J.N.* where they acknowledged their mistakes. They felt guilty and remorseful and were willing to address their behavior. The father was participating in substance abuse programs. (*In re J.N.*, *supra*, 181 Cal.App.4th at p. 1015, fn. 4.)

"The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient . . . to establish current risk depending upon present circumstances." (*In re J.N.*, *supra*, 181 Cal.App.4th at pp. 1025-1026.) The present circumstances in mother's case show there is a current risk to the child.

8

Mother also claims a jurisdictional finding based solely on her homelessness is insufficient as a matter of law. However, there is no evidence in the record to show the court made such a finding. Nevertheless, in conjunction with the potential for driving under the influence, living in an automobile increases the substantial risk of harm to child.

Mother argues the mere fact that at the time of the hearing she could not care for child nor could father, since his whereabouts were unknown, was insufficient to support a finding of jurisdiction. But, as with her homelessness, there is no evidence the court based its findings solely on these facts. (See *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 [appellate court may affirm decision on one of many grounds].)

*3. Sufficient Evidence to Support Disposition Order*

Mother relies on the same facts to support her claim there was insufficient evidence for the order that it would be detrimental to leave child in her care. Under section 361, subdivision (c)(1), to remove a child from a parent's physical custody, the court must find clear and convincing evidence there is substantial danger to the child's safety or well-being that cannot be overcome without such removal. There is sufficient evidence to support the disposition.

As discussed above, mother lacked insight into the nature of her behavior and its substantial potential for serious harm to child. Further, she failed to enroll in services intended to help her deal with the situation. Moreover, mother did not maintain any contact with child for several weeks while child was not in her custody. These facts all support the conclusion child was and would be in danger until mother acknowledged and took steps to remedy the problem that triggered SSA's involvement in child's life.

While this case may be closer than many, there was sufficient evidence to support the jurisdiction and disposition orders.

9

## DISPOSITION

The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.


10