Filed 1/9/15  In re James P. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

In re JAMES P., a Person Coming Under the Juvenile Court Law.

|  |  |
|---|---|
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. TIFFANY P., Defendant and Appellant. | F069489 (Super. Ct. No. 515877) OPINION |

## THE COURT*

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Poochigian, J., and Smith, J.

Tiffany P. appeals from a juvenile court judgment terminating her parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, § 366.26)[1] concerning her seven-year-old son, James. She contends substantial evidence did not support the juvenile court's finding that severing her parental rights to James would not be detrimental to him under two of the exceptions to adoption set forth in section 366.26, subdivision (c)(1)(B)(i), the "beneficial relationship" exception and subdivision (c)(1)(B)(v), the "sibling relationship" exception. We affirm.

## LEGAL BACKGROUND

Section 366.26 governs the proceedings at which the juvenile court must select a permanent plan for a child under its jurisdiction. If the court determines it is likely the child will be adopted, the statute requires the court to terminate parental rights. (§ 366.26, subd. (c)(1).) The court's prior findings that it would be detrimental to return the child to parental custody and its order terminating reunification services constitute a sufficient basis for terminating parental rights unless the court finds that one of the six exceptions specified in subdivision (c)(1)(B) would render termination of parental rights detrimental to the child.

Tiffany argued at the section 366.26 hearing that termination would be detrimental under the beneficial relationship and sibling relationship exceptions. The beneficial relationship exception states: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The sibling relationship exception states: "There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

## PROCEDURAL AND FACTUAL SUMMARY

This appeal marks our sixth review of the dependency proceedings concerning James who in September 2010, at the age of two, was taken into protective custody pursuant to an original section 300 petition along with his 17-month-old sister Hailey and newborn brother Daniel by the Stanislaus County Community Services Agency (agency) because Tiffany was locking James and Hailey in a bedroom for up to 15 hours at a time. The responding social worker noticed that Hailey had scratches and red marks on her face. James had recently been diagnosed with autism and Tiffany said she was overwhelmed trying to take care of the children and manage James's aggressive behavior. At the time, Tiffany was receiving mental health services for depression but not taking the recommended medication.

The juvenile court ordered the children removed from Tiffany's custody and ordered family reunification services for her. Tiffany appealed from the dispositional order removing the children from her custody. We reversed.[2] On remittitur, James and Hailey were returned to Tiffany's custody and Daniel was placed with his father with extended visits with Tiffany. During subsequent home visits, the social workers noted the home environment was chaotic and Tiffany was overwhelmed, trying to control the children. She gave in to James and Hailey and allowed them to squeeze, push, pull and sit on a puppy she gave them. It was not until James dropped the puppy and broke its leg

---

[2] *In re James P. et al.* (Nov. 14, 2011, F061732 [nonpub. opn.].)

that Tiffany followed the social worker's advice and gave the puppy away. In February 2012, the agency removed the children after Hailey bit Daniel twice, leaving bruises and bite marks on his arms. At the time, Tiffany was pregnant with her fourth child, Aubrey, who was born in May 2012.

In May 2012, the juvenile court ordered James removed from Tiffany's custody pursuant to a supplemental dependency petition (§ 387), stating it was not convinced she could take care of him full-time. The agency placed James in a foster care home where he remained throughout these proceedings. The court ordered Hailey placed in Tiffany's custody with family maintenance services and ordered Daniel to remain in his father's custody. The court also ordered a minimum of four hours of visitation between Tiffany and James each week and granted the agency discretion to arrange extended and monitored day visits. The court expressed its desire to return James to Tiffany after a gradual plan of increasing visitation. Tiffany appealed the juvenile court's order removing James from her care and we affirmed.[3]

The juvenile court provided reunification services for Tiffany over the ensuing 18 months and she made good progress during the first six. She was having up to four overnight visits a week with James and the juvenile court granted her sole legal and physical custody of Hailey and dismissed its dependency jurisdiction as to her.

At the six-month review hearing, the juvenile court continued reunification services for Tiffany but terminated services for James's father.[4] However, not long after, the agency discontinued overnight visitation after James on two occasions needed

---

**3**    *In re James P. et al.* (Sept. 11, 2013, F065284 [nonpub. opn.]).

**4**    James's father appealed from the juvenile court's order terminating his reunification services and we affirmed. (*In re James P.* (Jan. 24, 2014, F066441) [nonpub. opn.].)

immediate medical attention and Tiffany failed to obtain it. The agency reduced visitation to 16 hours a week split between three days.

By April 2013, Tiffany was living with Hailey and Aubrey and was pregnant with twins. The agency was limiting Tiffany's visits with James to twice weekly because she was not taking her medication and not making progress in her case plan. Meanwhile, James was happy and doing well in his foster mother's care. He was making progress in language and social skills but displayed aggressive behavior when frustrated such as biting, kicking and punching.

In May 2013, at the 12-month review hearing, the juvenile court found it would be detrimental to return James to Tiffany's custody and continued her services to the 18-month review hearing. Tiffany challenged the juvenile court's detriment finding on appeal and we affirmed.[5]

In August 2013, the agency recommended the juvenile court terminate Tiffany's reunification services and set a section 366.26 hearing. She was still not taking her medication or progressing in her case plan and had not progressed beyond twice weekly visitation. The agency reported it was difficult to maintain a consistent and stable visitation schedule between James and Tiffany because of her pregnancy, unexpected illnesses and her homelessness. In addition, Tiffany cut visits short to accommodate her interests. In September, Tiffany gave birth to twin daughters. Meanwhile, James was doing well with his foster mother. He was affectionate with her and was responding positively to her guidance, patience and structure.

In October 2013, the juvenile court conducted a contested 18-month review hearing and terminated Tiffany's reunification services. In so doing, the court commented on the inconsistency of her visitation with James. The court stated,

---

[5] *In re James P*. (Jan. 17, 2014, F067473 [nonpub. opn.]).

"[Tiffany's] visits … have been pretty inconsistent … during this entire year, and certainly during this reporting period." The court also ordered a bonding study and set a section 366.26 hearing. Tiffany challenged the juvenile court's setting order by writ petition which we denied.[6]

Dr. Cheryl Carmichael conducted the bonding study over multiple sessions from November 2013 through January 2014. As part of the study, Dr. Carmichael observed James interact with his foster mother alone and with Tiffany and Hailey in a separate session. Although Tiffany was attentive and directive during the visits and James referred to her as "mom," he was not affectionate toward her, attentive to her or interested in her guidance. In contrast, James constantly looked to his foster mother for reassurance, problem solving, and affection. He was cooperative and self-contained with her. Dr. Carmichael was most struck by the interaction between James and Hailey. Neither of them regulated their behavior, James because he could not and Hailey because she did not want to. As a result, their interaction was competitive and escalated to "behavioral dysfunction."

Dr. Carmichael opined that Tiffany and James did not have a "mother/child" relationship and that James and Hailey did not have a "strong, positive sibling relationship." Rather, Dr. Carmichael saw "competition, conflict and behavioral dysfunction as the hallmarks of their time together." Dr. Carmichael did not believe terminating Tiffany's parental rights would be detrimental to James.

In its report for the section 366.26 hearing, the agency recommended the juvenile court terminate Tiffany's parental rights and free James for adoption by his foster mother. The agency reported that Tiffany had unsupervised visits at the agency every other week

---

[6] *Tiffany P. v. The Superior Court of Stanislaus County* (Jan. 17, 2014, F068147 [nonpub. opn.]).

6

but did not visit him consistently, noting that she missed the month of December. The agency attached a copy of Dr. Carmichael's bonding study to its report.

In April 2014, the juvenile court conducted a contested section 366.26 hearing. Tiffany's attorney advocated for legal guardianship rather than adoption for James, arguing James was closely bonded to Tiffany and Hailey and would suffer detriment if Tiffany's parental rights were terminated. Tiffany was the sole witness. Prior to her testimony, county counsel made an offer of proof accepted by the parties that Tiffany did not visit James in December 2013, visited him three times in January 2014, cancelled two visits in February 2014, did not show up for a visit in early March 2014 and visited James in mid-March 2014 but was 13 minutes late and left 10 minutes early.

Tiffany testified she had twice monthly visits with James. She acknowledged missing both visits in December, one because she had a conflicting appointment. She could not remember why she missed the other one. She missed both visits in February and remembered missing one of them because she had to take the twins to the hospital. She missed the visit in early March because she was on the East Coast and unable to fly back because of a winter storm. When she and James visited, she read to him and they played with toys.

Tiffany described her relationship with James as "[a] loving, very bonded relationship." She knew James loved her because he was affectionate with her and told her he loved her. At every visit, he asked to go home with her. James also loved Hailey and was bonded to her.

On cross-examination, Tiffany testified that she had not had custody of Hailey for approximately a month because Hailey was in the care of her aunt who was seeking legal guardianship. Tiffany included Hailey in one of the visits with James in either November or December 2013 and the visit in January 2014 that Dr. Carmichael observed. Asked why she did not include Hailey in more of the visits, Tiffany explained she wanted one-

on-one time with James and the visit in late 2013 upset Hailey. Tiffany said Hailey cried all the way home.

The juvenile court terminated Tiffany's parental rights after finding that James was likely to be adopted and that terminating her parental rights would not be detrimental to him. The court stated:

> "[I]n order for the [c]ourt to find a compelling reason not to terminate parental rights and proceed with the adoption, the [c]ourt would have to find either the parent/child exception applies, and in order … to do that, the [c]ourt would have to find that the parents have maintained regular visitation and contact and that the child would benefit from continuing that relationship, and … the benefit of continuing the relationship [outweighs] the benefits that permanency would provide by adoption. [¶] … [¶] … And finding that there has not been regular visitation and contact precludes me from even having to go any further with regard to the parent/child exception."

> "I have a bonding study, and although there might be some argument that [there are] flaws in the bonding study, the bonding study indicates that there is not the type of parent/child relationship that is needed for the [c]ourt to find the parent/child exception [applies]. And it is the parent's burden of proof to prove that, and it has not been proven."

> "And as far as the sibling exception, … I have no doubt that Hailey loves James and I have no doubt that James enjoys seeing Hailey. But again, the [c]ourt has to find that there have been strong bonds and experiences that the … children have shared, that [there are] significant common experiences, and the reality is … that James has not been living with Hailey for a significant period of time, because James has been in the care of someone else. [¶] And … I'm not convinced [there is] proof, especially the bonding study doesn't [reflect] that ongoing contact is in James's best interest … as compared to the benefit that adoption would provide …."

This appeal ensued.

## DISCUSSION

Tiffany contends the juvenile court erred in terminating her parental rights because overall she maintained regular visitation and contact during the entire dependency

8

proceedings even if not during the final six months and she and James shared a strong and loving bond.  Therefore, she argues, the juvenile court should have found that termination of her parental rights would be detrimental to James under the beneficial relationship exception.  She further contends James and Hailey were raised together until they were initially removed and had frequent contact through visitation especially during James's overnight visits.  In addition, she argues, they demonstrated a strong and loving relationship when together.  Therefore, she argues, the juvenile court also erred in not finding that terminating her parental rights would substantially interfere with their sibling relationship and have a detrimental effect on James.  We conclude Tiffany failed to carry her burden of proof at the section 366.26 hearing.

"[T]he burden [of proof] is on the party seeking to establish the existence of one of the section 366.26, subdivision (c)(1) exceptions to produce that evidence." (*In re Megan S*. (2002) 104 Cal.App.4th 247, 252.)

When a juvenile court rejects a detriment claim and terminates parental rights, the appellate issue is not whether substantial evidence exists to support the court's rejection of the detriment claim but whether the juvenile court abused its discretion in so doing. (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.)  For this to occur, the proof offered would have to be uncontradicted and unimpeached so that discretion could be exercised only in one way, compelling a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570; *In re I.W*. (2009) 180 Cal.App.4th 1517, 1528.)  Based on our review of the record, we conclude the juvenile court properly exercised its discretion.

As to the beneficial relationship exception, Tiffany in essence conceded by her testimony that she did not maintain regular visitation and contact with James in the four months prior to the section 366.26 hearing.  Further, her argument on appeal that she maintained such contact in a global sense is thwarted by the juvenile court's finding in

9

October 2013 that visitation over the prior year had been inconsistent.  Therefore, Tiffany failed to carry her burden of proving that she regularly visited and contacted James and thus, failed to establish the existence of the beneficial relationship exception.

As to the sibling relationship exception, the juvenile court had Dr. Carmichael's bonding study and opinion that James was not strongly bonded to Hailey and that terminating Tiffany's parental rights would not be detrimental to James.  The only evidence that Tiffany offered to dispute that was her testimony that James loved Hailey and was bonded to her.  On appeal, Tiffany claims that Dr. Carmichael misinterpreted James and Hailey's interactions and therefore Dr. Carmichael's opinion is unreliable.  However, Tiffany's attorney did not object to the admission of Dr. Carmichael's report, call Dr. Carmichael as a witness or otherwise rebut her opinion.  Further, as reflected in the juvenile court's ruling, the juvenile court considered the conflicting and competing evidence and even noted that the bonding study had limitations yet concluded Tiffany failed to carry her burden of proof.  It is not our role to reevaluate the conflicting and competing evidence and revisit the juvenile court's failure-of-proof conclusion.

We find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.