Filed 6/2/15  In re M.D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.D., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.J., <br><br> Defendant and Appellant. | F070536 <br><br> (Super. Ct. No. 516661) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Gomes, Acting P.J., Kane, J. and Smith, J.

M.J. (father) appeals from a juvenile court judgment terminating his parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, 366.26)[1] for his two-year-old son M.D. He contends he met his burden of proving under section 366.26, subdivision (c)(1)(B)(i) that severing his parental rights would be detrimental to M.D. We affirm.

## LEGAL BACKGROUND

Section 366.26 governs the proceedings at which the juvenile court must select a permanent placement for a child adjudged its dependent. If the court determines it is likely the child will be adopted, the statute requires the court to terminate parental rights. (§ 366.26, subd. (c)(1).) The court's prior findings that it would be detrimental to return the child to parental custody and its order terminating reunification services constitute a sufficient basis for terminating parental rights unless the court finds that one of the six exceptions specified in section 366.26, subdivision (c)(1)(B) would render termination of parental rights detrimental to the child.

At the section 366.26 hearing, the juvenile court determined that terminating father's parental rights would not be detrimental to M.D. under the beneficial relationship exception. The beneficial relationship exception states: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated in this case in April 2013 when newborn M.D. and his mother Michelle tested positive for amphetamine. M.D. was not the first of Michelle's children to be so affected by her drug use. A decade before, she lost custody of her two other children after they were adjudged dependents of the juvenile court.

---

[1] All statutory references are to the Welfare and Institutions Code.

The Stanislaus County Community Services Agency (agency) took M.D. into protective custody and the juvenile court ordered him detained pursuant to a dependency petition. (§ 300, subd. (b).) Three weeks after his removal, he was placed in the home of Mr. and Mrs. O.

In July 2013, the juvenile court exercised its dependency jurisdiction over M.D. and denied Michelle reunification services. (§ 361.5, subd. (b)(10) & (11).) The court ordered father to participate in substance abuse and domestic violence services. The court granted Michelle a monthly two-hour visit and father weekly two-hour visits.

Over the next six months, father actively participated in his reunification services and regularly visited M.D. Their visits reportedly went well. Father played with M.D., held him and walked with him as he slept. He also fed M.D. and changed him as needed. The agency recommended the juvenile court continue services for father and grant it discretion to allow overnight and weekend visitation. However, the agency recommended the court order father not to have any contact with Michelle because she continued to use drugs.

In January 2014, at the six-month review hearing, the juvenile court adopted the agency's recommendations and advised father not to allow Michelle to have any contact with M.D. unless approved by the agency. The court set the 12-month review hearing for June 2014.

Meanwhile, however, minor's counsel filed a section 388 petition asking the juvenile court to terminate father's reunification services. Minor's counsel informed the juvenile court that father was allowing Michelle contact with M.D. and appeared to be in a relationship with her. As evidence, minor's counsel attached a declaration from Mrs. O. describing communications between father and Michelle via Facebook, as well as screenshots of the Facebook entries referenced in Mrs. O.'s declaration and a picture of Michelle holding and feeding M.D. which Michelle's mother posted on her Facebook page.

3.

In May 2014, the juvenile court conducted a contested hearing on the section 388 petition. Mrs. O. testified concerning the Facebook screenshots. The court entered them into evidence.

Father testified and denied being romantically involved with Michelle. He explained the circumstances in which Michelle was photographed holding M.D. He was on his way to the park when he encountered Michelle's mother ("the grandmother") at the bus station. She wanted to visit with M.D. and they agreed to meet at the park. The grandmother and Michelle's uncle met father and M.D. at the park. Father handed M.D. to the grandmother and she fed him while father spoke to the uncle at a distance. Michelle arrived 20 minutes later. The grandmother handed M.D. with his bottle to Michelle. As soon as father realized Michelle was there, he took M.D. from her and left on the bus. He said he did not intend to meet Michelle at the park. He said he was living in a sober living facility, had not used methamphetamine for 10 months and 26 days and finished the 12-step program and was working through it a second time.

At the conclusion of the hearing, the juvenile court granted the section 388 petition, terminated father's reunification services and set a section 366.26 hearing. The court concluded from father's dishonesty that he had not made substantive progress in his services plan and there was not a substantial likelihood M.D. could be returned to his custody by the 12-month review hearing.

Father filed a writ petition from the setting order (Cal. Rules of Court, rule 8.452), arguing the juvenile court erred in terminating his reunification services because he made substantive progress in his services plan. We denied the petition. (*M.J. v. Superior Court* (Aug. 12, 2014, F069515) [nonpub. opn.].)

In its report for the section 366.26 hearing, the agency reported that M.D. was strongly bonded to Mr. and Mrs. O. The agency was certain they would adopt M.D. if given the opportunity.

4.

In September 2014, the juvenile court conducted the section 366.26 hearing. Father testified he had not missed any visits with M.D. He said he played with him and fed him crackers. He did everything to make the most of their visits. He did not believe terminating his parental rights would serve M.D.'s best interest. Rather, it would serve M.D.'s best interest to be with him, M.D.'s biological father. However, father conceded it would not be detrimental to M.D. to be adopted by Mr. and Mrs. O. Father acknowledged they loved M.D. and said he was grateful for them. He said he loved M.D. "more than life itself."

The juvenile court found father regularly visited M.D., but that it would not be detrimental to M.D. to terminate father's parental rights. The court found it was likely that M.D. would be adopted and terminated father and Michelle's parental rights.

This appeal ensued.[2]

## DISCUSSION

Father contends he maintained regular visitation and contact with M.D. and "cultivated a very strong connection with [him]." Therefore, he argues, the juvenile court's finding that terminating his parental rights would not be detrimental is not supported by substantial evidence. We disagree.

"[T]he burden [of proof] is on the party seeking to establish the existence of one of the section 366.26, subdivision (c)(1) exceptions to produce that evidence." (*In re Megan S.* (2002) 104 Cal.App.4th 247, 252.)

When a juvenile court rejects a detriment claim and terminates parental rights, the appellate issue is *not* whether substantial evidence exists to support the court's rejection of the detriment claim but whether the juvenile court abused its discretion in so doing. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) For this to occur, the proof offered would have to be uncontradicted and unimpeached so that discretion could be exercised

---

[2] Michelle did not appeal.

only in one way, compelling a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*).)

It is undisputed father regularly visited M.D. He failed, however, to show that M.D. would benefit from continuing his relationship with him. "To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits— the parent must show that he or she occupies a parental role in the life of the child." (*I.W.*, *supra*, 180 Cal.App.4th at p. 1527.)

Although father lovingly cared for M.D. during visitation, he did not present any evidence that he occupied a parental role in M.D.'s life. Rather, the uncontradicted evidence was that M.D. was strongly bonded to Mr. and Mrs. O. in whose care he had been virtually since birth. Even father admitted that it would not be detrimental to M.D. to be adopted by them.[3]

We conclude father failed to show that he occupied a parental relationship with M.D. that would compel a finding that terminating his parental rights would be detrimental to M.D. as a matter of law.

We find no abuse of discretion.

**DISPOSITION**

The judgment is affirmed.

---

[3] Appellate counsel argues, citing father's testimony that "Father strongly believed … that terminating their bonded relationship would be highly detrimental to [M.D.], causing him great duress." Counsel misstates the evidence. On the page counsel cites father was asked by trial counsel whether he believed it would be in M.D.'s *best interests* to terminate father's parental rights. Father responded "No." His attorney also asked him whether he thought it would be harmful to M.D. to be adopted. Father responded, "Do I think it would be harmful for him? No, I do not."