[No. D039937. Fourth Dist., Div. One. Dec. 11, 2002.]

In re MEGAN S., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
DENNIS S. et al., Defendants and Appellants;
MEGAN S., Appellant.

**COUNSEL**

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant Dennis S.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant Robin R.

Linda M. Fabian, under appointment by the Court of Appeal, for Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**O'ROURKE, J.**—Dennis S., Robin R., and Megan S. appeal a judgment under Welfare and Institutions Code[1] section 366.26 terminating Dennis's and Robin's parental rights to Megan. The parties[2] contend the judgment should be reversed because they established Megan's relationship with her adult sister, Stephanie S.,[3] warranted application of the sibling relationship exception of section 366.26, subdivision (c)(1)(E).[4] We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2000, the San Diego County Health and Human Services Agency (the Agency) removed four-year-old Megan from her parents' custody and filed a section 300 petition on her behalf because Robin's substance abuse problems rendered her unable to care for the child and Megan had severe untreated dental decay. In October, the court made a true finding on the petition and ordered reunification services. In December, the Agency placed Megan with the mother of Stephanie's boyfriend.[5] At the October 2001 12-month review hearing, the court terminated reunification services and scheduled a section 366.26 hearing.

At the April 2002 section 366.26 hearing, the court found Megan was adoptable. Finding none of the section 366.26, subdivision (c)(1) exceptions applied, the court terminated parental rights.

### DISCUSSION

 The parties contend there is insufficient evidence to support the court's finding the section 366.26, subdivision (c)(1)(E) exception did not apply to Megan's relationship with Stephanie. The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals. If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. (*In re*

---

[1]All statutory references are to the Welfare and Institutions Code.

[2]In Megan's opening brief, she joined each of her parents' briefs; in Robin's opening brief, she joined Megan's brief.

[3]In September 2000, when the agency removed Megan, Robin and Dennis had three other children. At that time, Stephanie was 18, Staci S. was 13, and Dennis S. was 11. Stephanie is caring for Staci and Dennis. The record does not reveal whether the Agency has filed section 300 petitions as to the other children.

[4]Robin also appealed on the ground that her counsel acted ineffectively by not obtaining a bonding study. However, in a letter filed with this court on November 1, 2002, she withdrew this argument. Consequently, we have not addressed that issue in this opinion.

[5]The record initially erroneously indicated Megan was placed with the boyfriend's sister.

*Brandon C.* (1999) 71 Cal.App.4th 1530, 1534 [84 Cal.Rptr.2d 505].) We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 [29 Cal.Rptr.2d 654].) The appellant has the burden of showing the finding or order is not supported by substantial evidence. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420 [159 Cal.Rptr. 460].)

■■ . "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 [32 Cal.Rptr.2d 535].) The court must determine whether a minor is adoptable by clear and convincing evidence. (§ 366.26, subd. (c)(1).) If the court finds a minor is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds termination of parental rights would be detrimental to the minor under one of the specified exceptions. (§ 366.26, subd. (c)(1).) The parent has the burden to show termination would be detrimental to the minor under one of those exceptions. (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108 [89 Cal.Rptr.2d 664].)

■■ Newly enacted section 366.26, subdivision (c)(1)(E) provides an exception to terminating parental rights when: "There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."

There is no dispute that Megan and Stephanie are bonded and shared a home and common experiences. However, to establish the section 366.26, subdivision (c)(1)(E) exception, a party must establish severing the sibling relationship would cause detriment to the child. (*In re L. Y. L.* (2003) 101 Cal.App.4th 942, 952 [124 Cal.Rptr.2d 688].)

Here, there is no evidence Megan would suffer detriment if the relationship was severed. The social worker believed that terminating the relationship would not be traumatic to Megan. Although Megan's therapist believed sibling contact was important to the child, there was no evidence the therapist believed severing that relationship would detrimentally impact Megan. We can also infer Megan would not suffer detriment because she

never asked to increase visits with Stephanie. No appellant introduced contrary evidence.

█ The appellants imply the social worker had an obligation to determine whether Megan would suffer detriment if separated from her siblings. They are incorrect. Although the social worker had an obligation to assess the amount and nature of contact between Megan and her siblings (§ 366.21, subd. (i)(2)), there is no statutory requirement for a social worker to establish detriment. To the contrary, the burden is on the party seeking to establish the existence of one of the section 366.26, subdivision (c)(1) exceptions to produce that evidence. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1119-1120 [118 Cal.Rptr.2d 873].) █ The appellants had to obtain a psychological study or other evidence showing Megan would suffer detriment if separated from Stephanie.

Even assuming Megan would suffer detriment if separated from Stephanie, the court may still terminate parental rights if it determines Megan would benefit more from adoption than she would gain by maintaining a relationship with Stephanie. (*In re L. Y. L., supra,* 101 Cal.App.4th at pp. 952-953.) Here, however, the only expert testimony was that even though a bond existed between Megan and Stephanie, Megan's interest in a permanent placement "greatly" outweighed the quality of the relationship she had with Stephanie.

The parties contend the social worker's testimony was not credible because her testimony was contradictory. The social worker believed adoption was in Megan's best interests, but also that ongoing contact would be good for Megan and it was in her best interests to maintain the sibling relationship. However, she clarified her testimony by stating that although it was preferable for Megan to maintain a relationship with Stephanie, it was not necessary. In other words, the social worker believed Megan had two interests: (1) maintaining a relationship with Stephane; and (2) being adopted.[6] Under those circumstances, the court balances those interests to determine which interest is more important. (§ 366.26, subd. (c)(1)(E).)

Here, the court balanced Megan and Stephanie's strong bond with the legislative preference for adoption. The court thought the evidence about Stephanie was "disturbing." The court was concerned because Stephanie had alienated Megan's current caretaker, causing problems to the child, had

---

[6]In any event, because the court terminated parental rights, we infer the court found the social worker to be credible, a determination we may not reweigh. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53 [82 Cal.Rptr.2d 426].)

allowed Megan to stay overnight with the parents, and was involved with a man with a criminal history. The court believed she had bad judgment.

The court acknowledged there was a relationship between Megan and Stephanie, that Megan loved Stephanie very much, and Megan wanted to live with her. However, when looking at all the evidence, the court believed it was inappropriate to place Megan in long-term foster care with the hope that Stephanie would make good decisions in the future as opposed to giving Megan a stable parental relationship now.

The evidence supports the court's finding. The Agency was unwilling to consider Stephanie as an adoptive parent. Stephanie had a "life pattern" similar to her parents. Her boyfriend had lost his driver's license after a driving under the influence conviction. She and Megan had negative interactions during visits. She and her boyfriend fought and swore in front of Megan. Further, her "alignment" with Robin and Dennis often superseded Megan's best interests and safety. She allowed Robin and Dennis to stay in her home, allowing them to interact with the child. During one of these interactions, Robin told Megan they would live together, causing regressive behavior.

The appellants contend the court should not have considered these factors because they were irrelevant or improper. However, the court did not err in examining Stephanie's behavior or whether she had a beneficial relationship with Megan. As with the other exceptions in section 366.26, subdivision (c)(1), the court examines this subdivision within the context of the child's best interests. (§ 366.26, subd. (h); *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1165 [53 Cal.Rptr.2d 93].) Thus, the court had to consider whether it was in Megan's best interests to maintain a relationship with a sibling who was intending to marry a person with substance abuse issues, was aligned with the child's parents, and allowed the parents to upset the child, as compared to the permanence of adoption. Stephanie's parenting skills are relevant because of the nature of her relationship with Megan.

The parties contend the court should have found section 366.26, subdivision (c)(1)(E) applied, because doing so does not preclude terminating parental rights at a later date. However, the parties do not identify how this serves Megan's best interests. At the time of the section 366.26 hearing, Megan was six and one-half years old. At that time, there were 50 families willing to adopt her, 25 of whom would allow sibling contact. However, as children age, they become more difficult to place for adoption. (See, e.g., § 366.26, subd. (c)(3).) Waiting, therefore, would not be in Megan's best

interests, because it could permanently foreclose her from being adopted. (*In re L. Y. L., supra,* 101 Cal.App.4th at p. 953.) We infer the parties want the court to delay freeing Megan for adoption until Stephanie is able to adopt her. However, it is unclear whether the Agency will ever consider Stephanie as a suitable adoptive parent.[7] Waiting would not bring stability to Megan and, to the contrary, could leave her within the dependency system in perpetuity. She is entitled to stability now, not at some hypothetical point in the future. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

██ Moreover, in order to establish the section 366.26, subdivision (c)(1)(E) exception, a party must show a substantial interference with the sibling relationship. However, the evidence demonstrated the relationship between Megan and Stephanie would not be disrupted. The social worker has located 25 possible adoptive homes for Megan that would allow sibling contact. The social worker wanted to place her in such a home. Consequently, there would be no substantial interference with their relationship. Further, the only manner in which the court could serve both of Megan's interests was to free her for adoption, because she would gain the stability of a permanent home and maintain her relationship with Stephanie.

██ The parties correctly point out that there is no guarantee that sibling contact would be continued after adoption. They contend the court improperly relied on section 366.29 as a basis to continue the sibling relationship and terminate parental rights. That section provides: "With the consent of the adoptive parent or parents, the court may include in the final adoption order provisions for the adoptive parent or parents to facilitate postadoptive sibling contact." (§ 366.29, subd. (a).)

However, there is no evidence the court relied upon section 366.29 in making its determination. Although it discussed that section, the basis for the court's finding was that it was more important to give Megan a stable parental relationship than it was to preserve the relationship with Stephanie. Substantial evidence supports the court's finding that the section 366.26, subdivision (c)(1)(E) exception did not apply.

---

[7]Stephanie is not entitled to preference to adopt Megan because she is not the child's current caretaker. (§ 366.26, subd. (k).) Moreover, the Agency has the power to determine where a child is placed after parental rights are terminated and pending adoption. (*In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397 [114 Cal.Rptr.2d 46].)

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and McIntyre, J., concurred.

On January 9, 2003, the opinion was modified to read as printed above. The petition of appellant Robin R. for review by the Supreme Court was denied March 5, 2003.