Filed 5/8/13  In re D.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re D.R. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057542 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ019445) |
| v. | OPINION |
| P.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art VI, § 21.)  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

P.B. (mother) appeals from an order of the juvenile court terminating her parental rights to W.B. (born in August 2011) and D.R. (born in December 2009).[1]  Mother contends the court erred when it failed to apply the sibling relationship exception to preserve D.R.'s relationships with his siblings.  We find no error, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

The Riverside County Department of Public Social Services (Department) filed a petition in August 2011 alleging W.B, D.R.,[2] and their older half siblings[3] came within Welfare and Institutions Code[4] section 300, subdivision (b).  The petition alleged mother had an unresolved history of abusing controlled substances, and W.B. tested positive for amphetamines and methamphetamine when he was born.  The detention report stated that mother admitted relapsing and using methamphetamine the day before W.B.'s birth, and she did not call 911 until about an hour after W.B. was born at home.  He was admitted to the Neonatal Intensive Care Unit where he was expected to remain about two weeks.  Mother had been in a substance abuse program for about a year, but had been terminated

---

[1]  Mother also purports to appeal from an order denying her Welfare and Institutions Code section 388 petition.  However, she has raised no argument on appeal relevant to that order.  In addition, her sole argument on appeal relates only to D.R.; she does not contend that W.B., who was removed from her custody at birth, had any relationship with his siblings.

[2]  D.R.'s father is deceased.  W.B.'s father is unknown.

[3]  The older half siblings ranged in age from 15 years to three years.  Their father is W.T., who is also not a party to this appeal.

[4]  All further statutory references are to the Welfare and Institutions Code.

for failure to comply. She told the social worker she had been clean before her relapse. She did not complete her substance abuse program because she was told she did not have to do so after a prior child welfare case was closed, and she did not believe she had a drug problem any longer. Mother had enrolled in another substance abuse program twice before without finishing. Several of her children had tested positive for methamphetamine at their births.

At the detention hearing, the juvenile court found a prima facie case and detained the children. The older half siblings were allowed to remain in the family home with W.T., and D.R. and W.B. were removed to foster placements.

The Department filed a jurisdiction/disposition report in September 2011. The report stated that W.T. had expressed a desire to care for W.B. and D.R. but was unable to do so. He felt it was important that his children continue to visit with W.B. and D.R. and have a relationship with them. Mother had not made herself available for an interview and had not visited the children since the detention.

At the jurisdiction/disposition hearing, the juvenile court found the petition true. The court ordered reunification services for mother.

In February 2012, the Department filed a report for the six-month review hearing. D.R. was living with his paternal aunt, G.C., and was bonding to her and adjusting to the placement. He had difficulty seeing his half siblings leave with W.T. after visits. He was very close to half sibling J.T., and she was excited to see him. The half siblings' schedules allowed D.R. and W.B. to visit with them just once a month. W.T. told the

3

social worker that it was important for his children to see D.R., and he could arrange visits with D.R.'s caretaker. Mother had failed to make progress with her case plan.

At the review hearing, a representative from the Victory Outreach Recovery Home testified that mother had entered an inpatient program there in March 2012; she was in compliance with all the program requirements, and she was "doing very well." The juvenile court terminated services for mother and set a hearing date to determine appropriate permanent plans for D.R. and W.B.

The section 366.26 report stated that D.R. was healthy, was bonded to his aunt, and called her "Mamma." The boys visited their older half siblings monthly. W.T. did not appear to have a bond with them, but D.R. had a relationship with his half siblings and cried when it was time to leave. D.R. had difficulty staying in the room with the half siblings during the visits, and he called for G.C. At the end of the visits, he looked to G.C. for comfort. G.C. wanted to adopt D.R. She was willing to facilitate sibling visitation after adoption.

Mother filed a section 388 petition requesting reinstatement of reunification services. She stated that she had made substantial progress in her inpatient program; she had completed a parenting program; and she had been clean and sober for more than four months. Her children were bonded to her and severance of ties would be detrimental to them.

The juvenile court held a hearing on mother's section 388 petition in September 2012. A social worker testified that mother's inpatient program was not county-approved. The social worker stated that D.R. had a bond with his mother and half

4

siblings, and was especially bonded to his half sister J.T.  The social worker testified that D.R.'s caregiver wanted to continue sibling contact after adoption.  B.T., an adult half sister, testified that family visits with the children went well.  D.R. wanted to take his sister, J.T., with him when he left.  He was excited and happy to see the other children, and he screamed and cried if they left without him.  Another half sibling, A.T., testified that D.R. was "like [his] best friend."  D.R. was closest to A.T. and Ja.T., he was excited to see everyone at visits and sad when they ended.  Before the dependency, A.T. and D.R. had played video and ball games together, and D.R. had sometimes come into his room with his bottle and had lay with A.T. until he went to sleep.  Ja.T testified that she had lived with D.R. for two years and had a good relationship with him; he seemed to feel the closest to her.  When they lived together, she had played games with him.  During visits, he hugged her and cried when the visits were over.

D.R.'s caretaker testified that he loved his half siblings, and if she adopted D.R., she would allow him to visit them.  In her experience, W.B.'s caretakers had made an effort to ensure that W.B. also visited them.

The juvenile court found that mother failed to show a change of circumstances and denied the section 388 petition.  The court proceeded to the section 366.26 hearing.  Mother's counsel argued that the parental bond and sibling bond exceptions to adoption applied.  The court found the exceptions had not been established.  The court found D.R. and W.B. adoptable and terminated parental rights.

## III.  DISCUSSION

Mother contends the court erred when it failed to apply the sibling relationship exception to preserve D.R.'s relationships with his siblings.

An exception to the termination of parental rights applies if the trial court finds "[T]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)  "'[T]he "sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption.  It only applies when the juvenile court determines that there is a 'compelling reason' for concluding that the termination of parental rights would be 'detrimental' to the child due to 'substantial interference' with a sibling relationship." [Citations.]'"  (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 823.)  One court has observed that "the application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount.  [Citation.]"  (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)  For the sibling relationship exception to apply, the juvenile court must find both that a significant sibling relationship exists and that detriment would flow from severing it.  (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952.)

6

D.R. was 20 months old when the dependency began, and he had spent almost two-thirds of his life in a home with his siblings. It was undisputed that the children all loved one another and enjoyed each other's company during visits and that D.R. cried when the visits ended. The record does not show, however, that D.R. suffered emotional distress from missing his siblings between their monthly visits. Moreover, W.T. had told the social worker he was interested in facilitating visits between his children and D.R., and W.T. would coordinate the visits with D.R.'s prospective adoptive mother, G.C. G.C. also indicated she intended to provide future visits between D.R. and the half siblings. Thus, "termination of parental rights did not necessarily foreclose the continuation of the sibling relationships." (*In re Valerie A.*, *supra*, 152 Cal.App.4th at p. 1014.) There, the trial court stated it was "not convinced there [wa]s going to be a disruption in the siblings' relationship." Moreover, D.R. had a stable and loving relationship with G.C., his paternal aunt, and the juvenile court found he was bonded to her.

Citing *In re Megan S.* (2002) 104 Cal.App.4th 247, mother asserts in her reply brief that a caregiver's willingness to allow continued sibling visitation may not continue after termination of parental rights. In that case, although the court stated that "[t]he parties correctly point[ed] out that there is no guarantee that sibling contact would be continued after adoption," the court affirmed the trial court's finding that the sibling relationship exception did not apply, explaining: "[T]o establish the section 366.26, [former] subdivision (c)(1)(E) [now section 366.26, subdivision (c)(1)(B)(v)] exception, a party must show a substantial interference with the sibling relationship. However, the

evidence demonstrated that the relationship between Megan and [her sister] would not be disrupted.  The social worker has located 25 possible adoptive homes for Megan that would allow sibling contact.  The social worker wanted to place her in such a home.  Consequently, there would be no substantial interference with their relationship." (*In re Megan S.*, at p. 254.)  Thus, *Megan S.* is unhelpful to mother's argument.

Mother also cites *In re Kimberly S.* (1999) 71 Cal.App.4th 405 for the proposition that willingness to allow continued visitation is not relevant to the termination of parental rights, but arises only in the context of a post-severance, post-adoption agreement.  That case is not on point; it did not address the sibling relationship exception, but instead dealt with kinship adoption agreements under Family Code section 8714.7.

We conclude substantial evidence supported the juvenile court's finding that the sibling relationship exception had not been established.

## IV.  DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P.J.

RICHLI
J.

8