Filed 7/23/15  In re P.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re P. H. et al., Persons Coming Under the Juvenile Court Law. | |
| | D066845 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J517436A, D, E) |
| v. | |
| Gr. W. et al., | |
| Defendants and Appellants; | |
| G. W. et al., | |
| Appellants. | |

APPEAL from orders of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant Gr. W.

Valerie N. Lankford, appointment by the Court of Appeal, for Defendant and Appellant Ma. H.

Neale B. Gold, appointment by the Court of Appeal, for Minors and Appellants G.W. and M.H.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Gr. W. (Father), Ma. H. (Mother), and two older siblings, G. W. (G.) and M. W. (M.) (together Siblings), appeal orders pursuant to Welfare and Institutions Code[1] section 366.26 terminating parental rights to three girls, L.H., S.H., and P.H. (together Children) and selecting adoption as their permanent plans.  On appeal, Father and Mother contend the juvenile court erred by finding: (1) L.H. was adoptable; and (2) the sibling relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(v)) did not apply to preclude permanent plans of adoption for Children.  Siblings join in the contention the court erred by finding the sibling relationship exception to adoption did not apply.

FACTUAL AND PROCEDURAL BACKGROUND

L.H. was born in 2004, S.H. in 2006, and P.H. in 2009.  G. and M. are Children's older siblings.[2]  At the time of P.H.'s birth in 2009, Mother tested positive for methamphetamine and the San Diego County Health and Human Services Agency

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    Father is the legally presumed father of G. and L.H.

2

(Agency) detained P.H. out of the home.[3]  The juvenile court declared P.H. a dependent and ordered reunification services for Mother.  The court later terminated its jurisdiction over P.H.  Thereafter, all five children resided with Mother.

In 2012, Mother reported she was no longer able to care for any of her children.  Agency filed section 300, subdivision (b), dependency petitions on behalf of all five children and detained them out of the home.  The juvenile court sustained the petitions, declared the children dependents, removed them from parental custody, and ordered Agency to facilitate visitation among the children twice a month.  The children were placed by Agency in foster care.  M., L.H., and S.H. were placed in one foster home, G. was placed in a separate foster home, and P.H. was placed in a third foster home.  At the six-month and 12-month review hearings, the court granted Mother six additional months of reunification services.

In 2013, L.H. was removed from her foster home for misbehavior, placed in the Polinsky Children's Center for a month, and then placed in P.H.'s foster home.  A few months later, both L.H. and P.H. were relocated to the Polinsky Children's Center.  In October and November, the court held a contested 18-month review hearing.  Agency recommended termination of reunification services and setting a section 366.26 permanency hearing.  The court terminated Mother's reunification services and set a section 366.26 hearing.

---

[3]     At that time, G., M., and L.H. were not living with Mother.  Only S.H. lived with Mother.

In 2014, a section 366.26 hearing was conducted by the juvenile court. The court granted the request of Siblings (G. and M.) to participate in the hearing. The court received Agency's original section 366.26 report, addenda thereto, reports of Children's court-appointed special advocates (CASAs), and a sibling bonding study by psychologist Yanon Volcani; it heard the testimonies of Mother, L.H., S.H., Agency supervisor Susan Solis, L.H.'s CASA, Children's caregivers, and Volcani. P.H.'s CASA reported P.H. is close with her siblings (and, in particular, L.H.) and enjoyed the time she spent with them. L.H.'s CASA reported L.H. remained close to all of her siblings. Her CASA believed L.H. would enjoy seeing her siblings more frequently and that it would be in L.H.'s best interests to have a continued relationship with her family. The CASA for S.H. (and G. and M.) reported all three children enjoyed being with their siblings and cherished the times when they were together.

Solis testified that L.H., S.H., and P.H. were adoptable and Agency's goal was to find one adoptive home for all three girls. She believed L.H. was adoptable because of her age, characteristics, outgoing personality, and absence of medical or severe behavioral problems, although there are fewer potential adoptive homes for L.H. than for S.H. and P.H. because L.H. is older. Agency currently had identified one potential adoptive home for all three children, but no home study had yet been performed for that home. Furthermore, Agency often used its Chargers Calendar, Adopt 8 television advertisements, Fall Fest, and Spring Fling to find adoptive homes for children. Agency had previously used the Chargers Calendar and Adopt 8 to successfully place a set of

4

three girls and a set of three boys with adoptive homes. Solis had never been unsuccessful in finding an adoptive home for a sibling set, although there may have been instances in which Agency was unsuccessful. Agency had also identified two potential adoptive homes for L.H. alone (i.e., without her sisters). Solis testified that the stability of an adoptive home for Children outweighed continuation of the sibling relationships among Children and Siblings. She stated long-term foster care was not in Children's best interests.

Volcani testified his bonding study primarily focused on M., L.H., S.H., and P.H. He concluded that it was very important for them to have continuing contact with each other and with G. He explained their sibling relationships are central in the evolvement of their individual identities. They have internalized each other, both individually and as a whole, as a fundamental part of their self-structure. Referring to his bonding study, he testified the children's relationships may have been amplified because of the instability of their home life during their formative years. He testified it is important for, and beneficial to, a child to have positive stability in his or her life, which he described as a warm, caring, nurturing home where the child's psychological, emotional, and physical needs are met. He stated: "Consistency, stability, predictabilities tend to create psychological safety, which tends to result in the child . . . feeling secure, connected, and being able to express [his or her] competence and have opportunities to develop . . . competency, which . . . results in a good functioning human being . . . ."

L.H. testified that she did not want to be adopted and would throw a big fit if she were adopted, even if she were adopted with her two sisters (i.e., S.H. and P.H.). However, she stated she probably would be "fine" with her adoption with her sisters if she saw their adoptive family beforehand. If she were adopted alone, she would not feel so good, stay in her room, and never come out. L.H. would want to continue to see S.H. and P.H. and sometimes M. S.H. testified that she liked spending time with all of her siblings. She would feel sad if she were unable to live with M. anymore and not see her again. She would also be sad or mad if she could not see G., L.H., or P.H.. She did not want to be adopted because she could not see her siblings and Mother anymore. The parties stipulated that were P.H. to testify, she would testify that she would feel mad and sad if she could not see her sisters or brother.

Mother testified that her daughters were bonded and it would be harmful for them to not see each other in the future. They saw themselves as a unit, even though they had not always lived together.

L.H.'s caregiver testified that when P.H. spent the night with L.H., they acted like sisters and enjoyed hanging out together. L.H. was excited about visits with her siblings and would talk about them when they were not there. Her whole family was very important to her. Her caregiver stated L.H. was very connected to her siblings and they were part of her identity. She testified that continued contact between L.H. and her siblings should be fostered.

S.H.'s caregiver (who was also M.'s caregiver) testified that when L.H. visited, the girls appeared to have really missed each other, had a lot to say to each other, played a lot, and loved being around each other. She believed S.H. wanted to be with her sisters and S.H. told her that.

P.H.'s caregiver testified P.H. treated L.H. as an older sister. P.H. loved L.H. P.H. often talked about her siblings and wanted to see them.

L.H.'s CASA testified L.H. was very close to her siblings and did not want those relationships severed. Her CASA did not think adoption would be best for L.H.

The juvenile court found there was clear and convincing evidence it was likely L.H., S.H., and P.H. would be adopted if it terminated parental rights. It further found neither Mother nor Father met their burden to show any exception to permanent plans of adoption applied. The court concluded by clear and convincing evidence that adoption was in Children's best interests and terminated parental rights.[4] The court selected permanent plans of adoption for Children. Mother, G., and M. filed notices of appeal challenging the orders as to L.H., S.H., and P.H. Father filed a notice of appeal challenging only the order as to L.H.

---

4    Regarding G. and M., the court found they were adoptable, but because of their ages and expressed wishes not to be adopted, it ordered permanent plans of another permanent planned living arrangement (APPLA) for them.

DISCUSSION

I

*L.H.'s Adoptability*

Father and Mother contend the juvenile court erred by finding L.H. was adoptable for purposes of selecting a permanent plan for her under section 366.26.[5]

A

When there is no probability that a child will be reunified with a parent and reunification services have been terminated, the juvenile court shall conduct a section 366.26 hearing and select a permanent plan for the child. (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) "The court has four choices at the [section 366.26] permanency planning hearing. In order of preference the choices are: (1) terminate parental rights and order that the child be placed for adoption . . . ; (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care." (*Id.* at p. 53.) Adoption is the preferred permanent plan. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) At a section 366.26 hearing, the juvenile court, in selecting a permanent plan for a dependent child of the court, should find whether Agency has shown, by clear and convincing evidence, it is likely the child will be adopted and, if so, then terminate

_____

[5] Siblings apparently attempt to join in Father's and Mother's contention regarding L.H.'s adoptability, but they have no standing to do so. (*In re D.M.* (2012) 205 Cal.App.4th 283, 293-294 [court's finding that child is generally adoptable (before it decides whether any exception to adoption applies) does not injure any cognizable right of child's sibling, so sibling lacks standing to challenge adoptability finding].)

8

parental rights and order the child placed for adoption. (§ 366.26, subd. (c)(1).) In making that finding, the court shall consider Agency's adoption assessment report and any other relevant evidence. (§ 366.26, subd. (c)(1).) The fact the child has not yet been placed in a pre-adoptive home or foster family prepared to adopt the child is not a basis for finding the child is not likely to be adopted. (§ 366.26, subd. (c)(1).) In determining the likelihood of a child's adoption, the court focuses on whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt the child. (*In re Zeth S.* (2003) 31 Cal.4th 396, 406.)

When the court finds a child is generally adoptable, it does not examine the suitability of a prospective adoptive home. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1231.) The presence or absence of a proposed adoptive family is only one factor to be considered by the court. (*In re David H.* (1995) 33 Cal.App.4th 368, 378.) The court should also consider the child's wishes (§ 366.26, subd. (h)(1)), but the child's wishes are not necessarily determinative of his or her best interests. (*In re C.B.* (2010) 190 Cal.App.4th 102, 125.) If the court finds a child is likely to be adopted, it is the parent's or sibling's burden to show an exception applies to the preferred plan of adoption for the child. (§ 366.26, subd. (c)(1)(B); *Autumn H.*, *supra*, 27 Cal.App.4th at p. 574; *In re J.C.* (2014) 226 Cal.App.4th 503, 528; *In re D.M.*, *supra*, 205 Cal.App.4th at p. 290.)

On appeal from an order finding a child is likely to be adopted within the meaning of section 366.26, we apply the substantial evidence standard of review. (*In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223-224.) In determining whether there is substantial

9

evidence to support a finding or order, "[w]e do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts.  Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion."  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947 (*L.Y.L.*).)  The appellants challenging that finding bear the burden on appeal to show the evidence is insufficient to support the court's findings and orders.  (*Ibid.*; *In re D.M.*, *supra*, 205 Cal.App.4th at p. 291.)

B

Based on our review of the record and the appellants' briefs, we conclude Father and Mother have not carried their burden on appeal to show there is insufficient evidence to support the juvenile court's finding that L.H. is likely to be adopted.  The court implicitly found L.H. was generally adoptable, finding Solis's testimony credible.  Solis testified L.H. was adoptable because of her age, characteristics, outgoing personality, and absence of medical or severe behavioral problems.  The record showed L.H. was in good health, appeared developmentally on target in most areas, and had no psychological problems.  She also had a positive approach and a friendly and energetic disposition.  L.H.'s CASA described her as a confident, generous, engaging and lively girl.  Although there was evidence she had in the past been aggressive with peers, stole things and fabricated stories, that type of misbehavior was not reported in the 18-month permanency report, and therefore the court could have inferred her behavior had improved.  Solis also

10

testified there was one potential adoptive home for all three children (i.e., L.H., S.H. and P.H.) and two potential adoptive homes for L.H. alone (i.e., without her sisters). Furthermore, Agency often used its Chargers Calendar, Adopt 8 television advertisements, Fall Fest, and Spring Fling to find adoptive homes for children. It had previously used the Chargers Calendar and Adopt 8 to successfully place a set of three girls and a set of three boys in adoptive homes. Solis had never been unsuccessful in finding an adoptive home for a sibling set. The juvenile court could infer Agency had a good track record of finding adoptive homes for children like L.H. and, in particular, for sets of three siblings. Solis testified that adoption, and not long-term foster care, was in L.H.'s best interests (as well as in the best interests of S.H. and P.H.). Based on the foregoing evidence, we conclude there is substantial evidence to support the court's finding that L.H. is likely to be adopted.

To the extent Father and Mother cite other evidence and inferences that would have supported a contrary finding (i.e., L.H. is not likely to be adopted), they misconstrue and/or misapply the substantial evidence standard of review. The lack of a proposed adoptive family with a completed home study does not show a child is unlikely to be adopted. (*In re David H.*, *supra*, 33 Cal.App.4th at p. 378.) Although L.H.'s age at the time of the hearing (i.e., 11 years old) may have shown there were fewer adoptive homes for her than for younger children, it did not prove she was unlikely to be adopted. Also, although L.H. generally stated she did not want to be adopted, a child's wishes are not determinative of his or her best interests. (*In re C.B.*, *supra*, 190 Cal.App.4th at p. 125.)

11

In any event, L.H. was somewhat equivocal regarding adoption, testifying she probably would be fine with adoption with her sisters if she saw their adoptive family beforehand. Furthermore, contrary to Father's assertion, there does not appear to be a significant risk L.H. would become a "legal orphan" if an adoptive family ultimately was not found for her. (*In re I.I.* (2008) 168 Cal.App.4th 857, 871.) Finally, *In re B.D.*, *supra*, 159 Cal.App.4th 1218, cited by Father, is factually inapposite to this case and does not persuade us there is insufficient evidence to support the juvenile court's finding that L.H. is likely to be adopted.

## II

### *Sibling Relationship Exception to Adoption*

Father, Mother, and Siblings contend the juvenile court erred by finding the sibling relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(v)) did not apply to preclude permanent plans of adoption for Children.

### A

Adoption is the preferred permanent plan for a child under section 366.26. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 573; *In re Zeth S.*, *supra*, 31 Cal.4th at p. 413, fn. 10.) However, parental rights should not be terminated and adoption should not be selected as a child's permanent plan if the juvenile court finds one of the exceptions to adoption applies. (§ 366.26, subd. (c)(1)(B).) The sibling relationship exception applies if the court finds a compelling reason for finding termination of parental rights would be detrimental to the child because of one or more of the following circumstances:

12

> "There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

It is the parent's or sibling's burden to prove the sibling relationship exception to adoption applies. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 251-252.) In determining whether that exception applies, the court "must balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer." (*L.Y.L.*, *supra*, 101 Cal.App.4th at p. 951.) Accordingly, "even if a sibling relationship exists that is so strong that its severance would cause the child detriment, the court then weighs the benefit to the child of continuing the sibling relationship against the benefit to the child adoption would provide." (*Id.* at pp. 952-953.) In deciding whether the sibling relationship exception applies, the court considers the possible detriment to the child resulting from the loss of a sibling relationship, but not any detriment to the child's siblings. (*In re Celine R.*, *supra*, 31 Cal.4th at p. 54.)

In reviewing the juvenile court's finding whether the sibling relationship exception to adoption applies, we apply the substantial evidence standard of review. (*L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947; *In re D.M.*, *supra*, 205 Cal.App.4th at p. 291.) The appellant

13

has the burden on appeal to show substantial evidence does not support the court's finding. (*In re D.M.*, at p. 291.)

B

In finding the sibling relationship exception to adoption did not apply, the juvenile court stated: "Clearly there is something of a bond between and among [L.H., S.H., and P.H.] and between the three girls and [Siblings]." It found "the evidence establishes that . . . the sibling relationship between the three girls and the two older [siblings] has been a stable aspect of the girls' lives." Considering their chaotic history, the court found "[t]he children really have had to form a bond, in part real and in part fantasy, in order to have some sense of identity, because that's all they've had." Nevertheless, the court stated "even if there is a sibling bond, we have to balance that bond against the need for stability of the children and to determine whether the loss of the relationship . . . with G. and M. . . . can be so detrimental and injurious to the children that we should not go forward with adoption." The court found Children need permanence and development of individual senses of identity and competence. Based on its consideration of the circumstances in this case, the court found a preponderance of the evidence did not support the application of the sibling relationship exception to adoption.

C

Based on our review of the record, we conclude there is substantial evidence to support the juvenile court's finding that the sibling relationship exception did not apply to preclude permanent plans of adoption for Children. By finding only "something of a

14

bond" existed between and among Children and Siblings, the court presumably found they did not have "existing close and strong bonds" within the meaning of section 366.26, subdivision (c)(1)(B)(v). Nevertheless, assuming arguendo they had close bonds as siblings despite mostly living apart and visiting only periodically during the past couple of years and therefore would suffer some detriment if those bonds were severed or diminished by the adoption of Children, there is substantial evidence to support the court's finding the beneficial interests of Children would be better served through the permanence and stability of adoption rather than through continuance of the sibling relationships with a permanent plan of guardianship or long-term foster care. Solis testified the stability of an adoptive home for Children outweighed continuation of the sibling relationships among Children and Siblings. Although Solis apparently did not personally observe Children and Siblings interact, the court could nevertheless infer she had sufficient experience as an Agency adoptions supervisor to form a credible opinion regarding adoption of Children based on her supervision of Agency social workers who handled Children's cases and review of the case files.

Furthermore, although Volcani testified it was very important for the siblings to have continuing contact with each other and their sibling relationships were central to their individual identities, he also testified it is important for, and beneficial to, a child to have positive stability in his or her life, which he described as a warm, caring, nurturing home where the child's psychological, emotional, and physical needs are met. The court could have construed, and presumably did construe, Volcani's testimony as stating, in

15

effect, adoption of Children would be beneficial to them by giving them positive stability in their lives in an adoptive home in which their psychological, emotional, and physical needs would be met. Based on our review of the entire record, we conclude substantial evidence supports the court's finding, after weighing the benefits of adoption against the detriment of losing sibling relationships, that adoption of Children was in their best interests and therefore the sibling relationship exception to adoption under section 366.26, subdivision (c)(1)(B)(v), did not apply.

To the extent Father, Mother, and Siblings cite other evidence and argue contrary inferences from the evidence admitted at the hearing, they misconstrue and/or misapply the substantial evidence standard of review. Likewise, to the extent they focus on the detriment of the loss of sibling bonds that would be caused by Children's adoption without discussing and/or refuting the evidence showing the benefit of adoption outweighs that detriment, they apply the wrong standard. Under section 366.26, subdivision (c)(1)(B)(v), the court "balance[s] the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer." (*L.Y.L.*, *supra*, 101 Cal.App.4th at p. 951.) "[E]ven if a sibling relationship exists that is so strong that its severance would cause the child detriment, the court then weighs the benefit to the child of continuing the sibling relationship against the benefit to the child adoption would provide." (*Id*. at pp. 952-953.) Furthermore, the arguments of Father and Siblings that Agency had not identified a

16

specific adoptive home for Children and that postadoption contact among Children and Siblings was not guaranteed do not refute the substantial evidence supporting the court's finding that the benefits of adoption outweighed the detriment of possibly losing sibling relationships after adoption. Likewise, their argument that adoption is equally as revocable as guardianship is both unsupported by credible evidence and contrary to the legislative preference for adoption as the permanent plan for a child under section 366.26. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 573.) None of the cases cited by Father and Siblings persuade us to reach a contrary conclusion.

## DISPOSITION

The orders are affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

17