Filed 9/23/16  In re Gabriel H. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re GABRIEL H., a Person Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MANUEL H.,<br><br>        Defendant and Appellant. | A147350<br><br>(Mendocino County Super. Ct. No. SCUKJVSQ15-1721601) |

Earlier this year, in an appeal by Manuel H., we affirmed the dispositional order of the Mendocino Juvenile Court declaring Manuel H.'s son Gabriel a dependent child.  (*In re Gabriel H*. (May 25, 2016, A145964 [nonpub. opn.].)

Manuel H. (hereafter appellant) appeals again, this time from the order made at the conclusion of the mandatory six-month review hearing.  Appellant contends that substantial evidence does not support the juvenile court's finding that Gabriel could not be safely returned to his custody.

That finding is statutorily required:  "At the review hearing held six months after the initial dispositional hearing, . . . after considering the admissible and relevant evidence, the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of

1

the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . In making its determination, the court shall review and consider the social worker's report and recommendations . . . and shall consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which he or she availed himself or herself of services provided . . . ." (Welf. & Inst. Code,[1] § 361.21, subd. (e)(1).) "[T]he court shall specify the factual basis for its conclusion that the return would be detrimental . . . ." (*Id*., subd. (e)(2).)

Appellant's contention is to be evaluated according to well-established standards:

"The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals. If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. [Citation.] The appellant has the burden of showing the finding or order is not supported by substantial evidence. [Citation.]" (*In re Megan S*. (2002) 104 Cal.App.4th 247, 250–251.)

Appellant's contention is similar to a claim he made on the first appeal, which we addressed as follows (with insertions we now add):

"The social worker advised the court that the mother had sole legal and physical custody from March 2014 until Gabriel was detained in May of the following year. Appellant had no right of visitation. The social worker reported that appellant 'has begun visitation and it is going well.' Although this was 'encouraging,' appellant 'has shown minimal effort to follow through with services recommended and he has been dishonest in regards to having attended parenting classes.' The court was further advised that the

---

[1] Statutory references are to this code unless otherwise indicated.

2

Department[2] 'is worried that any continued inaction by Manuel, as well as the contentious nature of the relationship between [the] parents . . . will impede their ability to safely co-parent, which places Gabriel at risk for loss of a protective parent in his life, and also creates risk of serious emotional . . . and physical harm.' Neither parent had completed the home assessment form. Gabriel was doing well at his current 'relative placement.' Although the social worker recommended that appellant receive reunification services, '[h]e still needs to create a stronger relationship in order for the [Department] to consider placement.'

"At the dispositional hearing, counsel for the mother supported the Department's recommendation for continued 'out of-home placement,' and not placing Gabriel with appellant. So did Gabriel's counsel. Counsel for appellant argued that appellant has been making progress and, with reunification services, could be entrusted with Gabriel's custody. Gabriel was repeatedly described as a 'high needs child,' who, with his 'impulsive and oppositional behavior' would clearly present 'a very big challenge.'

"After the court broached the possibility of 'having the psychological evaluation of the child occur right away so we can . . . consider a trial home placement with father,' all concerned agreed to the court hearing testimony from the social worker, Jeanine Dael. She was asked 'what are the reasons you do not support return to the father at this point in time?' She answered:

" 'Based on the fact that he hasn't had a lot of time with his son. It's been years since he had any time with his son. To our knowledge, he has never taken care of Gabriel on his own. During the visits—[h]e does have two one-hour visits per week—during that time he has asked on numerous occasions why his son is behaving that way to the Social Worker Assistant who's been observing the visits, as well as asking her for advice on what to do during those visits.' Dael also testified that the Department had 'run Structured Decision Making' on appellant, who came out 'high risk.'

---

[2] This is a reference to the Mendocino County Department of Social Services, which returns as the respondent on this appeal.

3

"Dael believed that appellant's lack of honesty was also significant: 'I am concerned that . . . if he's willing to be dishonest about attending parenting classes . . . he would be dishonest about problems in the home with baby Gabriel and inability to meet his needs.' Because 'Gabriel's behaviors are very extreme and unpredictable, . . . Gabriel really needs to be in therapy.'

"Citing the case worker's 'Structured Decision Making' risk assessment, Gabriel's 'difficult behaviors,' the fact that appellant had 'no parenting history with this child,' and his inability to cope with 'the child's behaviors,' the court concluded it was 'indicative of the need to offer the father [reunification] services and to stabilize the child before he can be safely placed in the father's home. [¶] So, for these reasons, the Court will make the finding[] required under [section] 361.2, that it is not appropriate to place the child with the father at this time.'

" ' "To comport with due process, the detriment finding must be made under the clear and convincing evidence standard." ' " (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1081.) Appellant contends 'it does not appear' the juvenile court made the detriment finding according to this standard. Although the juvenile court did not expressly recite that it was going to apply the clear and convincing proof standard, that omission does not benefit appellant. 'When a public official is obligated to fulfill a duty before acting, the law presumes that, because the official acted, the duty must have been fulfilled beforehand. [Citation.] In the absence of evidence that the official duty was not performed, the presumption is conclusive.' (*In re Angelina E.* (2015) 233 Cal.App.4th 583, 588.) Appellant points to no such evidence.

"Appellant also contends substantial evidence does not support the juvenile court's finding. The dispositional report, which had to be received in evidence (§ 358, subd. (b)), is by itself substantial evidence. So was case worker Dael's testimony. (Evid. Code, § 411.) Together they constitute ample substantial evidence supporting the finding that it was not yet time to entrust Gabriel's custody to appellant." (*In re Gabriel H.*, *supra,* [2016 WL 3098724, at *3–*4, fns. omitted].)

4

Case worker Dael was succeeded by case worker Dolan,  It was Dolan who prepared the status review report of December 15, 2015 that was submitted to the juvenile court prior to the six-month review.  As relevant here, the report shows the following:

"Mr. H[.] has made contact with this social worker.  He has signed releases of information.  He has notified this social worker when his phone has not been working.  Mr. H[.] disclosed . . . that he was no longer residing with his girlfriend but did not inform this social worker of any change of address at that time.  When the social worker discussed this with Mr. H[.], he stated he had since moved back into his girlfriend's home.  The undersigned has requested at least a half dozen times that Mr. H[.] convey to his girlfriend and her mother the need for them to contact this social worker to discuss some concerns in order to approve home visits for Gabriel with his father.  Mr. H[.] acts as if he is interested in this happening yet this social worker has not received a phone call from either adult since the time of receiving this case. . . .

"Mr. H[.] has completed four of eight sessions of the Intake Support Group.  Out of ten weeks, he has attended four of those weeks in Willits . . . .  [He] was referred . . . on September 22, 2015. . . .  The Willits Family Resource Center shows" "[t]he last day he attended as of the writing of this report was November 17, 2015.  Often his work seems to get in the way of him being able to make it for the group and visits with Gabriel.  This social worker has discussed the importance of his regular attendance, and Mr. H[.] states he understands, but his work is not that flexible with regards to his schedule.  He often gets called in for extra shifts, and he does not turn that down.

"Mr. H[.] participated in five Triple P Parenting classes through the month of July and first week of August . . . .  [¶] . . . [¶  On November 3, 2015, the undersigned learned Mr. H[.] had been driving minor Gabriel in his car without a valid license.  He was immediately told he was not able to transport Gabriel during his visits until he had a driver's license.  Mr. H[.] agreed and explained he had an outstanding debt from a previous conviction.  He was making payments on this debt and, as soon as it was paid off, which he seemed to think would be in a month or so, he would have a valid license."

5

Under the heading "Necessity for Placement," the case worker concluded: "Return of the minor to his father's care would be detrimental at this time as the father has shown he is unable to be consistent and follow through with his commitments with regard to visiting his son. The father has not been forthcoming with regard to certain aspects of his life that could put the minor at risk." Yet there was some cause for optimism: "The father has been partially involved in the services of his case plan. His visits have been sporadic with his son. However, the quality of the visits has been positive, and his ability to safely parent his son is apparent. It is probable the minor will be returned to his care for either shared or full custody at the twelve-month review hearing."

The case worker's "summary" to the court was in the same vein: "Although the father . . . appears to have honest and straight forward intentions with a desire to reunify with his son, some of his actions demonstrate his inability to stand up to his employer and his housemates to be with his son. To wit, he has been unable to demonstrate an ability to follow through with services and [department] recommendations, to be available for his son on a consistent and regular basis, and to choose between meeting the objectives of his case plan (e.g., attending visitation and services) or his own wants (e.g., taking additional working shifts and not complying with tasks necessary to start home visits). In order for the minor to be returned to the care of his father, Mr. H[.] will need to step up his commitment to visiting with his son and fully participate in court-ordered treatment programs."

The case worker also provided the court with an "addendum" dated December 28, 2015. As relevant here, the court was advised that earlier that month the case worker had told appellant that his visits with Gabriel would be suspended "until you came in to meet with me," but appellant had not done so. "Also of note, Gabriel's behaviors have worsened. He is not sleeping but an hour or two a night. The foster family has worked on soothing him before bed, to no avail. . . . Additionally, the minor is barely eating. He is traditionally a picky eater, but lately he has not wanted to eat much of anything. The

6

foster family is going to have him take Ensure . . . until this problem can be fully addressed by medical professionals."

The juvenile court held the review hearing on December 29, 2015. At the start of the hearing, the court stated that "Gabriel is at an intensive foster care home in Willits"[3]; that "both parents are involved in services"; "there are some issues with respect to both parents"; and "I'm inclined to follow the [Department's] recommendation and continue services for six months."

Appellant's counsel argued for custody: "I don't believe there's sufficient grounds for Gabriel to remain out of his father's home at this time. There hasn't been a showing, as far as I can tell, really, that there is a substantial risk to Gabriel's physical or emotional well-being should the Court return [Gabriel] to him. Father not completing some parenting classes and having some missed visits because of a work schedule doesn't make the required showing that the Court needs for a continued out-of-home placement."[4]

Counsel for Gabriel responded: "I can't support the return of my client to his father at this time. It does appear that the visits go okay, although . . . there was a few hiccups, particularly in the missed visits. And father hasn't had my client for any

_____

[3] In her report to the court, the case worker described the placement as "a two-parent household that also includes two older foster sons. This home provides stability, structure and affection for Gabriel. All of his educational, developmental, physical and emotional needs are being addressed in this home." Gabriel was reported as diagnosed with a mild heart murmur, "a speech delay," and "a language disorder."

[4] Counsel began her argument by "making a continuing objection to the disposition orders from July 15th that Gabriel not be returned to the home of his father. He is the non-offending parent. There were not any sustained allegations as to him." This is not correct. In our prior opinion, we concluded that substantial evidence supported the finding that appellant " 'failed to protect his child from the mother.' " (*In re Gabriel H.*, *supra* [2016 WL 3098724, at *1–*2].) In his opening brief, which was filed before our prior opinion, appellant made essentially the same point: "Because substantial evidence did not support denial of appellant's request for placement at disposition, the review hearing order of continued out-of-home placement must be reversed." In his reply brief, which was filed after our opinion was filed, there is no mention of this point, which we treat as abandoned.

7

substantial period of time. He hasn't been able to have him [Gabriel] back in the home because Social Services has not completed those background checks that are required by law. He hasn't had any overnights. And . . . my client does have some behaviors that are real challenging for the foster home, who [*sic*] is quite skilled. And the father may be able to handle those. We just don't know because he hasn't had any kind of a transition or extended time with my client. [¶] So I would ask that the father . . . make sure that he get to all of the arranged visits, make sure that his family members work with the social worker so that he can start to have visits in his home, and then we can . . . start to expand that, go through a transition and my client could be placed in his father's home if appropriate."

Counsel for the Department concurred, adding "there was a background check [on the persons living with appellant] that was initiated, but the issue is some of the residents of the house have CPS histories and the social worker has tried to reach out and to discuss that and that hasn't happened. It's basically consistent with what's going on. There's been a very poor level of communication, although we've been attempting to do that. . . . [T]here's just a—a level . . . of participation we're not getting."

The court ruled that "[b]ased on the reports that I read and the argument . . . , I'm not going to return the child home to the father at this time. . . . [I]t does seem like the child hasn't been with the father enough to make that determination that a return home would be safe." "Based upon clear and convincing evidence, I find that return of the child to the . . . father would create a substantial risk to the safety, protection, or physical or emotional well-being of the child. And the factual basis for that is in the section entitled 'Necessity for Placement' and other parts of the report." The court further found that although the "father has partially completed the case plan," neither of Gabriel's parents "have made significant progress at this point in addressing the issues raised in previous reports."

We conclude this record contains ample substantial evidence to support the finding.

8

Appellant naturally emphasizes the evidence favoring him, particularly his attendance at programs intended to improve his parenting skills. But this court has held that even a parent's satisfactory completion of a case plan does not preclude a finding of detriment. (*In re Dustin R*. (1997) 54 Cal.App.4th 1131, 1142–1143.) Appellant obliquely suggests that he is the victim of misguided paternalism by the Department's case workers. But the record shows that no such motivation was pivotal. On the contrary, the record demonstrates that the focus of the Department, Gabriel's own counsel, and the court, was properly on Gabriel.

The record shows that appellant does not have a settled domestic situation. He lives with persons who have not cleared the Department's necessary background check. Given appellant's inability to adjust his work schedule, there is more than an abstract possibility that one of those persons would have charge of Gabriel. As the Department's counsel put it at the hearing: "the issue is some of the residents of the house have CPS histories and the social worker has tried to reach out and to discuss that and that hasn't happened." This factor alone, which appellant does not dispute, is by itself substantial evidence of "a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 361.21, subd. (e).)

Even more significant, Gabriel appears to be at a particularly delicate stage of life, coping with a myriad of problems caused by his special needs. He had been placed with foster parents that Gabriel's counsel described as "quite skilled" at dealing with those needs, a characterization appellant does not dispute. Nor does appellant challenge the statement of Gabriel's counsel's that he (appellant) had not had "extended time with my client." Visitation, however regular, cannot substitute for custody. Appellant's intentions may be the best, but the inescapable fact is that there is no history of him having exclusive custody of Gabriel, and a decisive role in Gabriel's raising. There is likewise no evidence that appellant had prepared himself to deal with Gabriel's problems, certainly not by enlisting the case worker's assistance.

In other words, there remained much for appellant to do. At no point did any Department case worker conclude that appellant was incapable of successfully taking

care of Gabriel.  In fact, a recurring theme was the shared belief that he could, in time, do so.  At the time of the review hearing, however, and in light of these circumstances, giving him custody of Gabriel clearly entailed an element of risk.  Even if the nature of the risk was no longer that which justified commencing the dependency, the court was required to take it into account.  (See *In re Joseph B*. (1996) 42 Cal.App.4th 890, 899 ["nothing in section[] 361.21 . . . requires that the detriment which justifies continued removal of the minor from parental custody must be akin to the detriment which necessitated juvenile court jurisdiction"].)

Accordingly, there is substantial evidence for the juvenile court to conclude "it does seem like the child hasn't been with the father enough to make that determination that a return home would be safe" and thus "return of the child to the . . . father would create a substantial risk to the safety, protection, or physical or emotional well-being of the child."

The order is affirmed.


_____
Richman, Acting P.J.


We concur:


_____
Stewart, J.


_____
Miller, J.