Filed 10/1/15  In re Elizabeth L. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ELIZABETH L., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEPHANIE L., <br><br> Defendant and Appellant. | F071233 <br><br> (Super. Ct. No. 516828) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Gomes, J. and Kane, J.

Stephanie L. appeals from the juvenile court's order terminating her parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, § 366.26)[1] for her three-year-old daughter, Elizabeth. Stephanie contends the juvenile court erred in not applying the exception to adoption set forth in section 366.26, subdivision (c)(1)(B)(i). We affirm.

## LEGAL BACKGROUND

Section 366.26 governs the proceedings at which the juvenile court must select a permanent placement for a child adjudged its dependent. If the court determines it is likely the child will be adopted, the statute requires the court to terminate parental rights. (§ 366.26, subd. (c)(1).) The court's prior findings it would be detrimental to return the child to parental custody, and its order terminating reunification services, constitute a sufficient basis for terminating parental rights unless the court finds that one of the six exceptions specified in section 366.26, subdivision (c)(1)(B) would render termination of parental rights detrimental to the child.

Stephanie contends the juvenile court should have found that termination of her parental rights would be detrimental under section 366.26, subdivision (c)(1)(B)(i), the "beneficial relationship exception" which states: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) We conclude the juvenile court properly ruled in not applying the exception.

## PROCEDURAL AND FACTUAL SUMMARY

These dependency proceedings were initiated in September 2013 during an investigation by the Stanislaus County Community Services Agency (agency) into the physical abuse of Stephanie's minor niece and nephew. At that time, Stephanie and her husband, Luis, were caring for their then 17-month-old daughter, Elizabeth, and

---

[1] All further statutory references are to the Welfare and Institutions Code.

2.

Stephanie's five-year-old niece ("the niece") and 15-month-old nephew ("the nephew"), the children of her sister Astrid. Astrid left her children with Stephanie and Luis and gave them temporary guardianship over them.

In late September 2013, school officials contacted the agency and reported that the niece had a bump on the left side of her forehead, scratches on her cheek, and a swollen nose. The week before she had a cut on her lower eyelid.

An emergency response social worker responded immediately to Stephanie and Luis's home. The social worker noted that the nephew was very thin for his age and appeared to have numerous bruises and scars in various stages of healing on his stomach and legs. The niece stated that she did not like her real mom, Astrid, and that one time Astrid hit her with a tablet and cut her eye. The niece denied that Stephanie or anyone else in the home hit her.

Stephanie and Luis stated that Astrid had taken her children in and out of their care and Stephanie said she knew Astrid physically abused the children. She and Luis agreed to take the nephew to the emergency room.

While on her way to the emergency room, the social worker stopped at Elizabeth's daycare to check on her. She checked Elizabeth for injuries or other signs of abuse or neglect and found none. She noted that Elizabeth was well-groomed and properly dressed and appeared to be healthy.

The emergency room medical staff evaluated the niece and the nephew. The niece had large deep purple bruises along her backside and thighs. The bruising extended in between her buttocks and all the way up to her anus. One of the large bruises on her leg appeared to have been made by a belt. The niece stated that Astrid hit her with a belt.

The nephew was extremely thin and lethargic. He had numerous old scars, burn marks and bruising on his head and face. He was so hungry that he became frantic when he saw food brought into the room.

Stephanie and Luis denied harming the niece and nephew. They claimed that Astrid periodically took the children from them and physically abused them while they were in her care.

The agency took the niece and nephew into protective custody and placed them in foster care. The agency allowed Luis to retain custody of Elizabeth on the condition he comply with a safety plan which prohibited Stephanie from having contact with Elizabeth.

The following day, the niece was interviewed by a detective. She initially stated that Astrid hit her with a belt, then recanted. She said that Stephanie hit her multiple times, pulled her ear, hurt her butt, burned her with a hot towel, and picked her up by the neck and dropped her. She had not seen Stephanie hit the nephew, but heard the sound of her striking him and saw marks on his body.

Several days later, in early October 2013, the agency removed Elizabeth from Luis after he allowed Stephanie to stay in their home overnight and resisted the safety plan.

The juvenile court exercised its dependency jurisdiction over all three children and ordered the niece and nephew returned to Astrid's care. The court ordered Elizabeth removed from Stephanie and Luis's custody and ordered reunification services for them.[2] Additionally, the court found that Stephanie was the perpetrator of the abuse and that, at a minimum, Luis failed to protect the niece and nephew. The agency placed Elizabeth with her paternal uncle and his wife in October 2013.

In September 2014, following a contested six-month review hearing, the juvenile court terminated Stephanie and Luis's reunification services and set a section 366.26 hearing. In ruling, the court acknowledged that they regularly visited Elizabeth but

---

[2]     Stephanie and Luis appealed the juvenile court's jurisdictional finding adjudging Elizabeth its dependent and its order removing her from their custody. We affirmed the juvenile court's decision in case number F068743. (*In re Elizabeth L.* (Aug. 15, 2014, F068743) [nonpub. opn.].)

4.

concluded they merely went through the motions of complying with the other aspects of their services plan. In addition, the court found they had not taken responsibility for their role in the serious physical abuse of their niece and nephew. The court was emphatic, stating "[T]hese children look like victims of war.… [¶ ] … [¶ ] [W]hen children are abused to this extent and nothing is done and they have scars from head to toe, that is very serious. And if children are in your care looking like that, there's no way in this world that I'm going to return Elizabeth to you."[3]

In its report for the section 366.26 hearing, the agency recommended the juvenile court terminate Stephanie and Luis's parental rights and select adoption as a permanent plan for Elizabeth. The agency reported that Elizabeth was happy and thriving in the care of her uncle and aunt who were very likely to adopt her. The agency also described Elizabeth's twice-monthly visits with her parents. She greeted them enthusiastically and they were loving and attentive to her.

The agency recommended the juvenile court find that Elizabeth was likely to be adopted and that terminating Stephanie and Luis's parental rights would not be detrimental to her.

In January 2015, the juvenile court conducted the section 366.26 hearing. Stephanie and Luis's attorneys advised the court they did not have any evidence to offer, however, Stephanie's attorney asked the court to allocate funds for a bonding study and called Stephanie to testify about her bond with Elizabeth. Stephanie testified she last visited Elizabeth sometime between January 19 and 22, 2015. At the end of the visit, Elizabeth said she wanted to go home with Stephanie and wanted to know when she could. Stephanie testified it was not unusual for Elizabeth to ask that question and had done so over the last year and a half. Stephanie also testified that Elizabeth screamed and

---

**3** Stephanie and Luis filed a writ petition challenging the juvenile court's order setting the section 366.26 hearing. We denied the writ petition in case number F070194. (*Luis L. v. Superior Court* (Dec. 17, 2014, F070194 [nonpub. opn.].)

cried at the end of visits and clung to her, but that the agency did not document those facts in its visitation observation reports. She believed that Elizabeth would suffer harm if she were never able to see Stephanie again because she would not have a relationship with her biological parents.

Luis made an offer of proof through his attorney and accepted by counsel that he loved Elizabeth very much and wanted what was best for her.

The juvenile court denied Stephanie's request for a bonding study.

Stephanie and Luis's attorneys objected to the agency's recommendation to terminate parental rights. Luis's attorney asked the court to consider a permanent plan of legal guardianship. Stephanie's attorney argued Stephane and Luis loved Elizabeth and had never abused her. He also argued she would be harmed if the court terminated parental rights because she knew her parents and they had been in her life.

The juvenile court found that Elizabeth was very likely to be adopted and that neither parent met their burden of proving that it would be detrimental to Elizabeth to terminate their parental rights. Consequently, the court terminated their parental rights and ordered that the agency initiate adoption procedures.

This appeal ensued.

## DISCUSSION

Stephanie contends the juvenile court erred in not applying the beneficial relationship exception to adoption given evidence that she maintained regular and consistent visitation with Elizabeth and occupied a parental role in Elizabeth's life. We disagree.

In order to find that adoption would be detrimental to a child based on the existence of a beneficial parent/child relationship, the juvenile court must make a factual determination that the parent maintained regular contact and visitation with the child and that the child would benefit from continuing the relationship. (§ 366.26, subd.

(c)(1)(B)(i).)  The party seeking to establish the exception bears the burden of producing the evidence.  (*In re Megan S.* (2002) 104 Cal.App.4th 247, 252.)

When a juvenile court rejects a detriment claim and terminates parental rights, the appellate issue is not whether substantial evidence exists to support the court's rejection of the detriment claim but whether the juvenile court abused its discretion in so doing. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)  For this to occur, the proof offered would have to be uncontradicted and unimpeached so that discretion could be exercised only in one way, compelling a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)  Based on our review of the record, we conclude the juvenile court properly exercised its discretion.

In this case, there is no dispute that Stephanie maintained regular visitation and contact with Elizabeth and that they enjoyed a loving relationship.  The question is whether the evidence compelled a finding that Elizabeth would benefit from continuing her relationship with Stephanie as a matter of law.  "To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits─the parent must show that he or she occupies a parental role in the life of the child."  (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1527.)

Elizabeth was removed from Stephanie's physical custody in September 2013 at the age of 17 months.  By the time of the section 366.26 hearing in January 2015, Elizabeth had spent 16 months, nearly half of her life, in her uncle and aunt's care.  Her only contact with Stephanie was twice monthly visits at the agency's facility and under its supervision.  And though Elizabeth clearly enjoyed her time with Stephanie, there is no evidence that she viewed Stephanie as a parental figure or was so bonded to her that she could not separate easily from her.  Indeed, the agency's visitation observation reports document that, with one exception, Elizabeth left willingly with the agency staff.

In our view, Stephanie failed to meet her burden of showing that her relationship with Elizabeth was that of a parent and child and was so beneficial to Elizabeth that severing it would be detrimental to Elizabeth as a matter of law. Thus, we affirm.

## DISPOSITION

We affirm the judgment.

8.